KELLOGG SWITCHBOARD & SUPPLY CO. v. DEAN ELECTRIC CO. et al.

(Circuit Court, N. D. Ohio, E. D. August 11, 1908.)

No. 6,869.

PATENTS (§ 328*)—INFRINGEMENT—CURRENT CONTROLLING DEVICE FOR TELE-PHONE CIRCUIT.

The Dean patent No. 722,212, for a current controlling device for telephone circuits, the purpose of which is to prevent the greater part of the steady current from passing through the subscriber's receiver, is not infringed by the device of the Manson patent No. 818,897, which operates on a different principle.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity.   On final hearing.

Curtis B. Camp and R. S. Taylor, for complainant.
Brown & Williams, for defendants.

TAYLER, District Judge.   This is a suit for the infringement of patent No. 722,212, issued ·March 10, 1903, to the complainant, the Kellogg Switchboard & Supply Company, as assignee of William W. Dean.   Infringement is claimed by the use of a device made in accordance with patent No. 818,897, granted April 24, 1906, to Ray H. Manson.

This patent refers to the method of controlling in the subscriber's telephone circuit ·the energizing current, sometimes called "steady current," which comes from the central station.   ·This current, if permitted to· pass unimpeded through the receiver, injures that delicate instrument.   Under the old system of local batteries, this difficulty was avoided by having an independent battery at the subscriber's station of much lower intensity or strength than the central station battery, this battery being located in a closed circuit, including the transmitter and the primary winding of an induction coil.   The patent was intended to cover a device whereby a small part only of the steady current originating at the central station should be permitted to pass through the receiver.

When a person talks into a telephone transmitter, the vibrations of its diaphragm produce undulations or changes of strength in the current.   These changing conditions in the strength of a current .furnish one of the most interesting phases or manifestations of electricity, and constitute an important element in scientifically considering this question, but it need not be further discussed in an opinion of this character.   It is sufficient to say that, on account of the undulating or alternating character of what is called the "voice current," different qualities as to conductivity attach to different materials and different arrangements and constructions of devices for conducting or interfering with the conduction of the electric current from those which arise where there is a steady current.

·Now, since the unimpeded passage of the steady current, the energizing current from the central station, through the receiver, would require a· receiver very much larger and more expensive than such receivers as are in ordinary use, and, indeed, would be very much less desirable in every way than ·to continue the use of a local or independent circuit and battery at the subscriber's station, resort is had to well-understood principles applicable to the different, degrees of opposition furnished to steady currents and to voice or undulating currents, whereby ·the steady or stronger current is diverted from the receiver, and only the lighter or voice currents permitted to pass through it.   The principles just referred to are these:   That voice or undulating currents are choked or checked by what are called "impedance · coils," and steady currents pass through impedance coils freely.   On the other hand, what are known as "condensers" present almost complete resistance to steady currents, while at the same

time offering apparently slight resistance to the flow of alternating or voice currents.

Now, it becomes apparent that if the energizing or steady current is permitted to pass freely through the circuit, except the receiver, and the voice current freely passes through the receiver, a situation arises where the receiver is unaffected by the strong or steady current, and the end sought for is attained. It was this which the patent in suit undertook to accomplish; and it was the principles just announced which the inventor undertook to apply and did apply to accomplish that result.

The following quotations from the patent will show the inventor's own idea of the scope and character of his invention. On page 1, from line 14 to line 65, the object and character of the invention are stated in general terms, as follows:

"In telephone systems of the common-battery or central-energy type, wherein current is supplied from the central station to the microphone at the substation, it has been the common practice to include the telephone receiver in series with the microphone, so that the energizing current which traverses the microphone also passes through the coils of the telephone receiver. This is objectionable, for various reasons. It frequently happens that the polarity of the source of energy at the central station is reversed often by the reversal of the line-wires by a lineman, and the energizing current is thus sent through the coil of the receiver in such a direction as to demagnetize the permanent magnet of the receiver, thereby destroying the efficiency and effective operation of the receiver. Moreover, since the coils of the receiver must carry the energizing current, the coils must be made of wire larger in cross-section than would need to be employed were the coils traversed only by the talking currents. Due to the employment of the larger wire, the coils cannot be as efficiently disposed upon the magnet-cores as would otherwise be possible, and, again, the passage of the energizing current through the coils subjects the diaphragm to a constant pull or tension. To counteract this constant pull or tension, the diaphragm must be made of increased rigidity or inflexibility, and a considerable air space must be left between the diaphragm and the ends of the magnet-poles, thereby decreasing the efficiency of the receiver.

"It is the object of the present invention to remove the receiver entirely from the influence of the energizing current traversing the microphone, whereby the several objections above enumerated are obviated.

"In accordance with the present invention, the receiver is included in a path which is opaque to the passage of the energizing current, which is usually continuous, while a parallel path is provided around the receiver, which is opaque, to the passage of the talking currents, while permitting the energizing current to pass freely therethrough. In practice, I usually include a condenser in the path containing the receiver, and an impedance or choking coil in the path which is parallel thereto."

On page 2, lines 82 to 97, the term "opaque," as used in the patent, is distinguished and specifically defined as follows:

"By the term 'opaque,' as employed herein in defining a circuit in its relation to the energizing current, I contemplate a circuit containing a condenser or equivalent device which prevents the passage through the circuit of an appreciable or substantial amount of current—that is, a sufficient amount to affect the operation of the system to an objectionable degree—and by the term 'opaque,' when referring to the talking currents, I contemplate that characteristic of the circuit which will prevent the passage of the talking currents therethrough in sufficient amount to materially affect the transmission of the talking currents through the path containing the telephone receiver."

In some of the claims the word "opaque" is used in describing the two parallel paths, as in claim 14, which is in these words:

"(14) A telephone substation circuit and apparatus comprising a main circuit, said circuit having two parallel paths, one path opaque to voice currents but permitting the flow of steady currents, and the other opaque to steady currents but permitting the flow of voice currents, a receiver in the latter path responsive to the voice currents thereover, a transmitter in the main circuit outside of said parallel paths, and a switch-hook automatically controlling the circuit through the said paths in the use of the apparatus, substantially as described."

The apparatus described in the patent as the best known to the patentee for the accomplishment of the objects of his invention is illustrated in Fig. 1 of the drawings, which is here reproduced,

In this figure, a and a' are the two limbs of the circuit which connect the substation with the central station, CS, and over which the mingled steady current and voice current flow. At k is an impedance coil in one branch of the conductor, a', at l a condenser, and at f' the receiver, both in the other branch of the conductor, a'. The impedance coil permits the free flow of steady current, but obstructs the flow of voice currents, while the condenser permits the ·ready flow of voice currents, but prevents the flow of steady current. Hence the steady current takes the path through the coil, and the voice currents the path through the condenser and receiver to unite again at the hook switch contact 8.

The principle applied in this arrangement is very simple. It is to divide the line conductor into two parallel branches at the substation, and put the receiver in one of them, and put in the receiver path some sort of an obstruction to the flow of steady current, and in the other path some obstruction to the flow of voice currents. Such a combination will separate the voice currents from the steady current more or less perfectly, according to the effectiveness of the devices used in the two paths to perform their intended functions. Thus we see that the receiver is in the path which is opaque to steady currents, but permitting the flow of voice currents.

If we now look at the description of the alleged infringing patent, we discover the distinction between the two. Patent No. 818,897, p. 2, l. 90:

"To put the matter more specifically, I employ a Wheatstone bridge in series with the transmitter in the line-circuit over which the transmitter current flows, the receiver being located in the bridge-wire proper. The resistance of the four arms of the bridge are so proportioned with respect to each other that, although steady current flowing over the line will pass through them freely, no current will pass through the bridge-wire containing the receiver. This means that I employ a Wheatstone bridge adjusted to a state

of balance with respect to direct currents, such currents being excluded from the receiver not because the receiver-circuit is in any sense opaque to such direct currents, but because there is no difference of potential between the terminals of the receiver circuit, and therefore no tendency for current to flow through the receiver.

"It will be seen that the method which I employ for preventing a flow of steady current through the receiver is wholly distinct from any method based on insulation, opposition, or obstruction, for in my arrangement steady current could flow if a cause existed, but will no more flow, due to the balance of the bridge, than if the receiver-terminals were truly short-circuited.

"In order that fluctuating currents may not for the same reason be caused to pass by rather than through the receiver-circuit, I make the diagonally opposite arms of the Wheatstone bridge possess in large degree the property of self-induction, thereby giving to these two arms comparatively a very high impedance to fluctuating currents. It is evident, therefore, that the same conditions that hold with respect to steady currents do not hold with respect to fluctuating currents. In other words, the bridge is balanced with respect to steady currents, with the result that fluctuating currents choose the comparatively low impedance path through the receiver rather than the comparatively high impedance path through the two arms of the bridge that possess self-induction. By these means I achieve the desirable result of excluding direct current from the receiver without employing any medium opaque to direct currents in the receiver-circuit, and at the same time I force practically all fluctuating currents through the receiver-path."

The following diagram correctly represents the circuit arrangement employed by the defendants:

Let us now compare the principle and method of operation of these two devices. There are two ways of excluding steady current from an electrical circuit, or from a device such as a receiver in a circuit. First, resistance. This is what the patent in suit employs. Second, by the balance of pressure which may be brought about with reference to any particular part of the circuit or device in the circuit. It is by this method that the defendants' device excludes a steady current from the receiver. To put it in another form, but expressing really the same principle, we find that the device of the patent in suit puts a barrier in the circuit which virtually opens the circuit more or less completely, while the defendants' device leaves the circuit intact and

excludes current by the opposing electromotive force of the current itself.

Complainant's device is one which depends upon the fact that resistances are so arranged that the receiver is on a line which is opaque to steady currents and a conductor of voice currents. The defendants' device depends upon a balance of electromotive force due to the use of what is called a "Wheatstone bridge," and the receiver in this device is not in what we may call a territory opaque to any kind of current. If this be true, then we have a different philosophy at the foundation of the two ·separate systems. This, it seems to me, must be true ·when we bear in mind that the theory of the quality of voice currents has long been understood, and that certain kinds of resistances were opaque to steady currents and conductors of voice currents, and other resistances were opaque to voice currents and conductors of steady currents. Now, these facts being true, it seems to me that where, as in the patent in suit, the theory of its efficiency was the presence of these resistances, and, in the other, the presence of these resistances, of course, as they had long been known to exist, but with the basic principle upon which the place of safety for the receiver was put being the balance of forces of currents in the bridge, we have a different situation.

Making the distinction summarily in different form, we have this: In the device of the patent in suit, the receiver is in the path which is opaque to steady currents, but permitting the flow of voice currents. In the Manson, or alleged infringing, device, the receiver is in a path not opaque to any current as such, but at a place where, while equilibrium exists between the two steady currents, it is as if it was a nonconductor or opaque. But this is not because it is opaqué. It furnishes no resistance at all to steady current. But on account of the low impedance path through the receiver and the comparatively high impedance path through the two arms of the bridge that possess self-induction, the voice or fluctuating currents choose the easier path by way of the receiver. It is a balanced Wheatstone bridge for steady current, but, on account of the self-induction of the impedance coil in the two arms of the bridge, it becomes unbalanced for alternating currents.

With this view of the principles involved in the ·two devices, I find no infringement. The bill is therefore dismissed.